Case number 19-6214. Dwight Miller v. Kevin Genovese. All arguments not to exceed 15 minutes per side. Mr. Andrew Daniel Barr for the appellant. Mr. Barr. Good afternoon, your honors. Opposing counsel, may it please the court. My name is Andrew Barr. I represent the petitioner in this matter, Dwight Miller. I'd like to reserve three minutes for rebuttal. Fine. Your honors, this case stems from the violation of Mr. Miller's confrontation clause rights. As this court is aware, during Mr. Miller's first trial, the trial court incarcerated state witness Miss Kathy Blackwell because he did not believe that she was testifying truthfully. The trial court then provided Miss Blackwell with statements to review during her incarceration, and then called Miss Blackwell as his own witness. Miss Blackwell ultimately testified consistent with the statement she was provided. And when asked why her testimony had changed so dramatically pre-incarceration and post-incarceration, she told Mr. Miller's counsel, quote, because I don't want to go to jail. This entire process was deemed unfair to Mr. Miller and required a new trial. During Mr. Miller's second trial, the trial court reintroduced the same error by allowing the state to use post-incarceration testimony from Miss Blackwell. But then the state court compounded the error by prohibiting Mr. Miller from showing the jury that Miss Blackwell was biased against him and striking from the record the statement, because I don't want to go to jail. You know, I'm happy to answer any questions the court has, but absent the court having a specific direction they'd like to go now, I'd like to briefly discuss why Mr. Miller's case rises to the level of the AEDPA showing. And it's been a majority of the day talking about the harmless, the Van Arsdale harmlessness factors. Mr. Barr, I'd like to begin by asking whether AEDPA actually applies to this case, given that it doesn't look like to me the state court ever addressed the confrontation question. Yes, Judge Bush, it's something we struggled with when thinking through this case. On the one hand, it's a matter of perspective. So if we're thinking about this being a confrontation clause right case generally, then the state probably did approach it with the state versus canon reference, and it would just be an unreasonable application of AEDPA. Whereas, on the other hand, you're exactly right, Judge Bush, there's no discussion of the pertinent confrontation clause right cases, like Davis, like Van Arsdale, or this court's cases interpreting that right, like Blackston or Vasquez or Boggs. So, you know, I think we get to the same result here where even if AEDPA applies, the state acted contrary to an unreasonably applied Supreme Court precedent, but you're exactly right, Judge Bush, it's very easy to read this record to say that the state court never actually addressed the right at issue, and AEDPA wouldn't even apply. Assuming AEDPA does apply, if you look to, and I don't understand the state to disagree with this, so I'll be brief. There clearly is established federal law that applies to Mr. Miller's case. Again, as Judge Bush notes, it's the Davis and Van Arsdale line that was not addressed by the state and frankly wasn't addressed by the state in briefing to this court. And this, this court's decision in Blackston makes clear that that is in fact clearly established law so I'll move on from that unless the court has any questions. Looking to the second aspect of AEDPA, the contrary to or unreasonable application factor, regardless which way this court wants to take that decision, they both lead to the same result which the state violated AEDPA. If we're looking at a contrary to case, it's contrary to because this, the state court's decision clearly went against the Davis and Van Arsdale line and just for everyone to be in the same context, what Davis and Van Arsdale hold at bottom is that a criminal defendant has the right to cross examine a witness for prototypical forms of bias, and that includes undue pressure from the threat of incarceration. That is precisely what happened here. And the state doesn't oppose that or object to that line of reasoning in their briefing, so I don't know if that's a waiver or forfeiture issue or simply them standing with the Crawford line of cases but in any event, under AEDPA, the state court decision is contrary to clearly established federal law. If this court were to look- Does the court give any reason for why it excluded that because I don't want to go to jail line? Your Honor, the best discussion of why that is actually comes from what I've called Miller 3. It's the same terminology that the federal habeas court used as well, the district court, and the dissent. And it looks to be a matter of perspective from the second appellate court. The majority opinion looks to Crawford and has a very cursory review of what that case requires and says, well, there was prior cross examination at the first hearing, and that's sufficient. The dissent points out correctly that the whole problem with the first trial was the procedure used by the trial court. And the majority doesn't address that at all. They don't discuss why it's acceptable to remove that line of questioning regarding Ms. Blackwell's bias. But the dissent, in fact, does discuss that quite lengthily and explains that it's a procedural requirement that the Supreme Court has made through the Davis-Van Arsdal style line. Now, the court doesn't cite Davis and Van Arsdal in the dissent, but he makes very clear that the fundamental tainted problem that came from the first trial infected the second trial as well as soon as post-incarceration testimony was admitted into evidence. So the short answer, Your Honor, is no, there's not a great example or a great explanation for why we are where we are, but the dissent would be your best place to look if trying to understand what was going through the court's thinking back in 2013. Looking to the other EDPA side of this, just to round out this first thought, the unreasonable application, if this court decides that Crawford actually is the appropriate standard simply because it states confrontation clause in the case, I think it's helpful for this court to keep in mind that Crawford is a case about when. When is cross-examination required? That's what Crawford speaks to. Davis and Van Arsdal and several other cases in that line speak to what constitutes effective cross-examination, what constitutes constitutionally adequate cross-examination. And Justice Scalia, the author of Crawford, was always very clear when he was trying to change Supreme Court precedent or comment or especially overrule Supreme Court precedent. He makes no comment like that at all in Crawford, and it makes sense. Crawford is doing something different in the confrontation clause area than the Davis and Van Arsdal line. So Crawford is certainly applicable in the sense that it says confrontation clause in the case, but that's about the extent of its usefulness here because of the Davis line of cases that speaks directly to the violation the state court committed. Are you arguing then that the unreasonable application prong of AEDPA, if we were to apply that, we should apply it to say that there was an unreasonable application of Davis and Van Arsdal? Is that what you're arguing? Or is it that there's an unreasonable application of Crawford? Yes, Judge Moore. My understanding of the unreasonable application prong is that it's premised on the state court identifying the correct legal standard. So only if the court did assume that Crawford was the correct legal standard would we get to the unreasonable application prong. And if we get there, Crawford at bottom says there must be prior cross-examination, but it doesn't attempt to explain what constitutes prior cross-examination. That is what the Davis, Van Arsdal, Olden cases all hold. And they do say, at minimum, you have to allow the defendant to cross-examine about a prototypical form of bias. And if that doesn't occur, any other cross-examination that might have happened is an opposite to the constitutional violation. In each of those cases, cross-examination occurred to the problematic witness. It just wasn't cross-examination about that prototypical form of bias. And that's precisely the issue here. Could you address the harmless error question, assuming that we found that there was a constitutional confrontation clause violation? Is it harmless? Yes, Judge Moore, I'd be happy to. So the Van Arsdal case is the first case to talk about harmlessness, obviously not in the AEDPA context. But I do think Van Arsdal is a good starting point for the discussion because it has the five non-exhaustive factors that a court should look to. But zooming out just a little bit from what Van Arsdal is doing in every case to follow it, specifically Blackson and Vasquez from this case, which I think are probably factually most helpful for this court. What the judge is asked to consider is, do they have confidence in the result absent the tainted testimony? That's the ultimate question here. It's been framed different ways. It's been phrased different ways. But that's at bottom what the court is asking. Do we have confidence in this result? And Your Honor, as I submit, there's no way to have confidence in this result based on the untainted testimony. We have a case where the only unbiased witness that can tie my client, Mr. Miller, to knowledge of the crime is Ms. Blackwell. She's the only person who is unbiased. The only other witness at all who can tie Mr. Miller to the crime is Clement Harris, who admittedly was addicted to crack cocaine, was taking crack cocaine at the time of the murder allegedly happened. And his story actually falls apart with undisputed evidence. And I won't get too deep into that, Your Honors. But just briefly, Clement Harris's story is he was sitting outside a apartment complex in the rain at two in the morning. He didn't live there. And he saw a point blank shotgun murder, followed up by my client getting out of his own car, pushing the dead body over a backseat and driving the victim's car away. It is undisputed that they found my client's clothes from the night of the murder, and there was no blood on them. They went and tested the car. There's no fingerprints in the car from my client. The police made very clear that Mr. Rice, the victim's car, was full of blood and brain matter. There's just no way Mr. Harris... We don't know what actually happened that night, Your Honors. That's not what we're here to decide. But we know it didn't happen. It didn't happen the way Mr. Harris says it happened because my client would be covered in blood. And there would be fingerprints all over Mr. Rice's car. And if we keep looking at the other witnesses, Ms. Bernal claims that my client showed up at her house about an hour later, and she claims to have seen him. But what she doesn't claim is he was covered in blood. She doesn't claim anything that would be close to the idea of supporting what Mr. Harris actually says if we had a point blank murder and then my client sitting in a pool of blood driving a car around. The other things that we do know, Your Honor, about this is that Mr. Rice's body was found in the exact same location that Clement Harris had disposed of evidence before this in a murder with Sheila Bernal. We know that Sheila Bernal and Clement Harris talked to each other before they went to the police. If we look to this court's decision in Blackston, Blackston says in a small community with a small social circle, it's quite likely that witnesses can coordinate testimony. And when that happens, and you're operating in the absence of physical evidence, which in this case means forensic evidence, you have to be very suspect of these witnesses. And that's when witness testimony becomes crucial. That's the word that this court's used and Supreme Court has used, crucial. And if we're talking about crucial witness testimony, Ms. Blackwell has testimony that no other witness has that ties my client to the murder in a way that no other evidence can do. And even if we use the case that the state wants to rely on, which is this Reiner v. Woods case, if you look at Reiner, all the thought process and discussion that goes into Reiner applies equally to my client insofar as we're talking about unique evidence that cannot tie my client to the murder, other than from the tainted witness. Here, Ms. Blackwell. Your Honors, I see that I'm out of time. I'd like to reserve the rest for rebuttal. Fine. Thank you. Mr. Douglas. May it please the court. Davey Douglas on behalf of the respondent, Kevin Genovese. This court should affirm the dismissal of the habeas petition for two reasons. First, the state court reasonably concluded that the petitioner's confrontation clause rights were not violated. And second, even if there was a violation, any such error was harmless. So I'd like to start by quickly framing the issue for before the court. And the issue is whether the state court's decision that Kathy that admitting Kathy Blackwell's testimony was an unreasonable application of Crawford v. Washington. Any argument or claim that the testimony was inadmissible purely because it was tainted or unfairly prejudicial is procedurally defaulted because the petitioner did not exhaust this claim. It did not exhaust that claim as a matter of federal law in state court. Why didn't you why didn't the state raise this, though, in the in the answer? And in fact, I think the firm did it said in the answer of the district court that there was no procedural default. Yes, your honor. The state had initially in the in the supplemental in the supplemental pleadings argued that the claim was procedurally defaulted because it wasn't raised as a matter of federal law. The initial pleading, though, is correct. In the initial pleading. Counsel's initial review of the state court's decision made it appear as if the claim was properly raised. Going back on further review during the supplemental briefing. It came to counsel's attention that there was a possible procedural default here. However, counsel also acknowledges. Do you have any authority allowing that would allow a state to revive procedural default argument after having waived it in the initial response of pleading? It would allow the state to revive it in the supplemental briefing. Right. The fact that this court has said that procedural default is a defense that can be waived, but it must be expressly waived. But it can also be considered that the court has the discretion, either the district court or this court to consider that defense when it's raised in a supplemental pleading. What case says that? I am blanking on the name of the case, but I believe that it is Owens versus Mays. It says that an argument not raised in the district court, this court in habeas in a habeas proceeding, this court still has the ability to consider. But the issue of procedural default, the issue that's properly before the court is whether the state courts application of Crawford versus Washington was unreasonable. And here it wasn't because the state court recognized the two prong test that to admit an unavailable witnesses testimony, that witness must be unavailable and the defendant must have a prior opportunity to cross examine the witness. And here the record showed that the state went to great lengths to try and track down Ms. Blackwell, and they were unable to do so. Isn't it rather meaningless to get to the second prong? Isn't it rather meaningless to say that defendant must have had a prior opportunity to cross examine, but we're not going to allow any of the fruits of that cross examination to come in at trial? Some of the fruits of the cross examination did come in. But the key fruit here is the fact that Blackwell stated at the first trial that the only reason why she was remembering or testifying as she did was because she didn't want to go to jail again. And that key fact was not allowed to be brought out to the jury. That's correct, Your Honor, but it still doesn't render the state court's decision an unreasonable application of Crawford because the issue before the state court wasn't the adequacy or the effectiveness of the cross examination, it was merely the opportunity. And since the record showed that trial counsel had the opportunity to cross examine Ms. Blackwell at the first trial, it was not an unreasonable application. So you're saying it would not have been unreasonable for the state court to just exclude all of the cross examination, and that still would have been a reasonable application of Crawford? Based on the way that the claim was presented in state court. Yes, Your Honor, I believe that it could have been because there was the well. No, Your Honor, I don't believe so, because there would have there would have been no cross examination. How much of the cross examination is necessary, do you think, for it to be a reasonable application of Crawford? I would say at least a small amount, at least a small amount, and the amount here is more than sufficient to satisfy the Crawford standard because, for example, trial counsel was able to cross examine Ms. Blackwell about her prior memory loss. She was able to, trial counsel was able to impeach Ms. Blackwell's credibility with her admissions that she was a prior drug user, and that that had affected her memory. And so isn't the particular issue here a rather fundamental statement about why Ms. Blackwell suddenly was able to, quote, remember, unquote, what she had said before was the threat that she would be re-jailed if she did not so remember. And your position is that because that's only one of several things on which she could be and was cross examined, that it's fine for the state court to be consistent with Crawford to limit the cross examination in that way. Is that right? Yes, Your Honor, but with the caveat that this position is based on the manner in which the claim was presented to the state court. To the state court, all it had was just a straightforward application of Crawford. And the fact that the district court went a little further and said that specifically redacting Ms. Blackwell's testimony about not wanting to go back to jail shows that at most, reasonable jurists could disagree about the state court's resolution of this claim. Your opponent is arguing Davis and Van Arsdale. Are you just saying we can't consider those two cases or how do you deal with them? Yes, Your Honor, that was not the issue before the state court. This court's review of the issue is confined to Crawford and the application of Crawford because the state court below was never presented with the arguments from Davis or Van Arsdale. The only issue that the state court even addressed was Crawford, so yes, Your Honor. So if a defendant says in state court that he's raising a confrontation clause problem, what does that defendant have to do? Does the defendant have to mention Davis and Van Arsdale or is it enough to say I have a confrontation clause problem because the testimony that I was making my statement only because I was under threat of going back to jail? That is a violation of my confrontation clause rights. That would possibly be sufficient. I mean, there's the four factor test to look at to whether a claim is properly raised as an issue of federal law and using the phrase confrontation clause and explaining why likely would be sufficient to raise that issue, but that's not what we had here. We had the state court actually pointing out that there was no confrontation clause challenge yet still concluding based on a straightforward application of Crawford that there was no confrontation clause violation. And that state court decision, the district court properly applied EDPA deference to that state court decision. And EDPA deference is also what this court should apply in reviewing that decision and should find that it was not an unreasonable application of Crawford. But even if the court finds a confrontation clause violation, any error was harmless because the state's proof in this case was substantial. There was physical evidence that linked the petitioner to the murder. There was a shotgun and a shotgun shell that were found in the petitioner's bedroom and that shotgun shell matched the size and shape of the ammunition that was taken from the victim's body. Is it true that that was a very common form of ammunition? Yes, Your Honor, that is correct, but it still was significant that it was the same manufacturer and the same size, seven and a half. And you also had an eyewitness who saw the murder. And that's this Harris fellow? Yes, Your Honor, it is Clement Harris, who was able to recognize the defendant because he'd gone to school with him. He knew what his voice sounded like, he knew his car, and he saw a shotgun appear from the petitioner's car. A blast and then saw petitioner exit the vehicle, shove the victim over and drive away in the victim's car. And then you had Nina Champion, whose testimony put petitioner in Brownsville shortly before the murder. And she also said that she saw shotgun shells and a shotgun in the petitioner's trunk. And she described the shotgun as having a piece of gray duct tape on it, which is exactly how the gun appeared that was found in the petitioner's bedroom. What do we do about the fact that apparently each of these witnesses is heavily involved in drugs such that they are the equivalent of drugged or inebriated or whatever? That was an issue that was brought out on both direct and cross-examination, and the witnesses admitted to their drug use, but they also testified that the drug use did not impact their memory. For example, Mr. Harris said that using crack just gave him a little bit of a rush, but that he was still very much within his senses. And Mr. Neal said that any use of crack cocaine did not impact her ability to perceive and recall the incidents. Mr. Douglas, I'd like to go back to the question I asked Mr. Barr about whether AEDPA applies here or not. If we were to hold that the state had waived the procedural exhaustion point, would you agree that AEDPA would not apply here, given that the Confrontation Clause argument was not presented to the state court? Your Honor, first I may need to clarify the respondent's position. The respondent is not arguing that the whole claim itself is procedurally defaulted. Just specifically the argument that the right to a fair trial or a violation of due process was violated. So you believe the state's position is that the Confrontation Clause argument was raised before the state trial court? It was properly preserved for federal habeas review based on the state court's opinion. The issue wasn't in fact raised, but because the state court still concluded that there was not a violation of Crawford, the issue was sufficiently preserved for federal habeas review. And respondent would submit that AEDPA deference, this court should give AEDPA deference, that AEDPA does apply. So the whole procedural default argument, if I could clarify that, is going to the due process fair trial issues, but not going to the Confrontation Clause issue, is that right? Yes, Your Honor. Then again, specifically that the claim properly before the court is, did the state court reasonably apply Crawford v. Washington? And based on the way it was presented in state court, respondent argues that the state court's decision was not unreasonable. It cited the two-prong test from Crawford and did a very straightforward application. The witness was unavailable and there was a prior opportunity for cross-examination. So if there are no further questions... One question that I have is, under Crawford, is there a case from the Supreme Court that says having the opportunity for cross-exam is enough? Crawford itself says that, it uses the adjectives effective and, Your Honor, I see my time has expired. If you could finish your answer, that would be great. Thank you. Thank you. At different points in Crawford, Crawford uses adjectives like effective or adequate. And that's an example of Crawford going a little bit further at times. And when the issue is properly raised, looking into the adequacy of the cross-examination. But that's not the issue that was raised or that the state court decided here. They simply looked at whether there was an opportunity, which is still consistent with the holding in Crawford. Thank you. Any further questions? No? Okay. Mr. Barr, you have three minutes. Thank you. I'd like to pick up where my opposing counsel left off. That full and effective language from Crawford first makes an appearance in California v. Green, a 1970 Supreme Court case. And then it keeps being repeated over and over and over. Delaware v. Finster. You can look to some of the cases cited more heavily by Davis and Bernarsdahl. That's exactly the point. And maybe this is what Judge Bush was going to. Crawford talks about when cross-examination is required. No one's disputing that cross-examination is required for Ms. Blackwell's testimony to be introduced. The second question is, prior cross-examination, as the Supreme Court has held time and again, doesn't just mean physical confrontation. It means effective. It means constitutionally adequate. So Judge Bush, to answer your question, how much cross-examination had to be let in to be okay? A constitutionally adequate amount. That's how much. And that's exactly what Davis and Bernarsdahl and that whole line of cases defines for us. It says that at minimum, you have to be able to cross-examine a witness on a prototypical form of bias. That is a direct quote from Bernarsdahl. If we look to this court's case in Blackston and Vasquez, it applies that very straightforward principle to relatively analogous situations where you have a witness who the trial court made some type of decision that prohibited the defendant from bringing out such a bias. And in both of those cases, this court granted habeas because that is a clear problem. And when you have crucial witness testimony like we do here, it can't be harmless. And I think there's a little bit of a phrasing issue here that I think is more important than just semantics. Judge Bush, you asked about the Confrontation Clause violation and opposing counsel kept talking about Crawford violations. Those are not the same thing. Crawford is just one aspect of the Confrontation Clause. If you look at Claim 51, which I cite on page 5 of the reply brief, Claim 51, which was granted by this court and granted by the district court, does not say anything about Crawford. It says instead that the Supreme Court erred by, quote, not allowing the prior testimony of unavailable witness to be read into the record. This is not a Crawford issue. This is a Confrontation Clause issue. And the Supreme Court's Confrontation Clause precedent includes Davis and Van Arsdale. Those predate Crawford by 30 years. So we can even go back to the 1930s and look at the Ellsford case. They all say the same thing. It's an unbroken line of Supreme Court cases saying a criminal defendant has the right under the Confrontation Clause to question about undue influence of incarceration. And that's precisely what Mr. Miller is asking for here. Speaking real briefly about the physical evidence, yes, Judge Moore, it was the typical size 12-gauge shell, and it was a typical red idea, or red shell casing, because that's what's sold at Walmart and almost every department store in the state. I would guess that almost every 12-gauge shotgun owner has red 7.5-inch shotgun shells. Your Honor, if I could make one final point and then proceed with my time. One sentence. Your time is up. I just wanted to point out that Clement Harris was the original suspect of the crime until he pointed towards my client, Mr. Miller. And if there's any way to be more sort of willing to say whatever you need to say to get out of things, I can't imagine his situation. And I think that's a very relevant aspect, given he's the only eyewitness to this alleged murder, or the murder that my client allegedly did. Thank you, Your Honors. Thank you both. Mr. Barr, I see that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client and the interest in justice. And we appreciate both of your arguments, and the case will be submitted.